**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IDA GWEN DERR, | ) |
| | ) |
| Plaintiff, | )    Civ. Action No. 20-1628-JLH |
| | ) |
| v. | ) |
| | ) |
| DELAWARE DEPARTMENT OF SERVICES | ) |
| FOR CHILDREN, YOUTH, AND THEIR | ) |
| FAMILIES, through the DIVISION OF | ) |
| PREVENTION AND BEHAVIORAL | ) |
| HEALTH SERVICES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**MEMORANDUM ORDER**</u>

This is an employment discrimination case. Plaintiff Ida Gwen Derr alleges that her former employer, Defendant Delaware Department of Services for Children, Youth, and their Families, discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964. Defendant now moves for summary judgment. (D.I. 91.) The Court has reviewed the parties' submissions (D.I. 92, 93, 95, 96, 97) and concludes that Defendant's motion for summary judgment will be GRANTED.

**I.     BACKGROUND**

The Court recounts the facts of record in the light most favorable to Plaintiff. In 2014, the U.S. Department of Health and Human Services, through the Substance Abuse and Mental Health Services Administration ("SAMHSA"), awarded Defendant a federal grant (the "Grant") to fund a program titled Project Community Outreach, Referral and Early Intervention ("CORE"). (D.I. 96 at APPX046–49.) The program aimed to provide early intervention to persons at a high risk for psychosis. (D.I. 93 at A382.)

The Grant required Defendant to have a principal investigator and a project director who reported to the principal investigator.  (D.I. 93 at A079; D.I. 96 at APPX238.)  In April 2015, Plaintiff was selected as the project director.  (D.I. 93 at A438; D.I. 96 at APPX230.)

Plaintiff initially reported to principal investigator Susan Cycyk.  (D.I. 96 at APPX239.) In or around late 2017, Harvey G. Doppelt, Ph.D., replaced Cycyk and became the principal investigator.  (*Id.* at APPX245.)  Dr. Doppelt would not talk to Plaintiff.  (*Id.* at APPX240–41, APPX245.)  During one of Plaintiff's interactions with Dr. Doppelt, he yelled at her and pounded the table in a public restaurant because Plaintiff removed one of her subordinates from a task that Dr. Doppelt had assigned to the subordinate.  (*Id.* at APPX257–58.)  In another instance at a dinner with colleagues, Plaintiff commented that contractors should receive benefits, and Dr. Doppelt yelled at Plaintiff and told her that in certain industries she would be fired for making a comment like that.  (*Id.* at APPX273–74.)  In yet another instance, Dr. Doppelt yelled at Plaintiff in front of her subordinate when Plaintiff informed Dr. Doppelt that his supervisor removed the youth coordinator piece of CORE from his purview.  (*Id.* at APPX278–84.)  Dr. Doppelt forbade Plaintiff from communicating with anyone above him in the department, and Plaintiff feared facing Dr. Doppelt's wrath if she were to do so.  (*Id.* at APPX295–96, APPX299.)

Plaintiff was not the only one who found it difficult to work with Dr. Doppelt.  Multiple witnesses testified that he was challenging to work with and that he was critical to both men and women.  (D.I. 93 at A559, A644, A646, A665, A676, A732.)

On August 29, 2019, Plaintiff learned that the CORE Grant funding would be expiring at the end of September 2019; prior to that time, she believed that CORE would at least be able to use "set-aside funding" to extend services through December 2019.  (*Id.* at A496–97, A506–07.)

On August 31, 2019, Plaintiff e-mailed Dr. Doppelt to "submit [her] resignation[,]"stating that her last day would be September 29, 2019.  (*Id.* at A498.)

On September 15, 2019, Plaintiff sent a letter to one of Dr. Doppelt's supervisors, the director of the Division of Prevention and Behavioral Health Services.  (*Id.* at A502–09.)  The eight-page, single-spaced letter detailed Plaintiff's concerns with Dr. Doppelt's behavior and his management of the Grant.  The letter did not mention or even suggest that Plaintiff was being treated differently because of her sex.

In February 2020, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC").  (D.I. 96 at APPX016–17.)  She filed an EEOC charge on July 17, 2020.  (D.I. 93 at A526–29.)  On September 2, 2020, the EEOC dismissed the charge and issued Plaintiff a right to sue letter.  (D.I. 96 at APPX019 ("Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.").)

Plaintiff filed a *pro se* Complaint in this Court on November 30, 2020.  (D.I. 1.)  Plaintiff thereafter obtained counsel and filed an Amended Complaint.  (D.I. 8.)  The Amended Complaint contains three counts: (1) Title VII sex discrimination; (2) Title VII retaliation; and (3) a state law claim for breach of the implied covenant of good faith and fair dealing.  (*Id.*)

## II.    LEGAL STANDARD

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden is on the movant to demonstrate the absence of a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)).   A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

To withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").   Courts are "not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011). "[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v.*

*Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

## III.   DISCUSSION

### A.   Sex Discrimination–Hostile Work Environment

Count One of the Amended Complaint alleges discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17.  Defendant contends that it is entitled to summary judgment on Count One for three, independent reasons: (1) the claim is time-barred; (2) Plaintiff lacks standing; and (3) Plaintiff has not pointed to evidence that establishes that she was subjected to a hostile work environment on the basis of her sex.  I agree with the third argument, so I don't address the first two.

To establish a hostile work environment under Title VII,

> a plaintiff must show that 1) the employee suffered intentional discrimination because of his/her membership in a protected class such as sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability.

*LaRochelle v. Wilmac Corp.*, 769 F. App'x 57, 61 (3d Cir. 2019) (cleaned up).

Defendant argues that Plaintiff cannot show facts sufficient to support the first element, which requires a showing of discrimination based on a protected class, including sex.  "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination" based on a plaintiff's sex.  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (cleaned up).  "Many may suffer severe or pervasive harassment . . . , but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief."  *Verdu v. Trs. of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27,

2022) (quoting *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)), *cert. denied*, 143 S. Ct. 784 (2023).

Viewed in the light most favorable to Plaintiff, the record reflects that Plaintiff's supervisor, Dr. Doppelt, was abrasive and had a hierarchical and authoritarian management style. (D.I. 93 at A502–09, A646, A665, A732; D.I. 96 at APPX257–58, APPX278–84, APPX295–99.) The problem for Plaintiff is that she has not pointed to any evidence that Dr. Doppelt's treatment of her was based on her sex. On the contrary, the evidence of record (viewed in the light most favorable to Plaintiff) suggests that Dr. Doppelt treated both men and women with the same disrespect. (D.I. 93 at A676 (Plaintiff's male peer testifying that Dr. Doppelt verbally abused men and women), A643 (employee testifying that Dr. Doppelt ostracized both men and women).)

"Title VII is not 'a general civility code for the American workplace.'" *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). No reasonable jury could find on this record that Dr. Doppelt discriminated against Plaintiff based on her sex. Because Plaintiff "fails sufficiently to establish the existence of an essential element of [her] case on which [she] bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus [Defendant] is entitled to judgment as a matter of law" on Count One. *Blunt*, 767 F.3d at 265 (citing *Lauren W.*, 480 F.3d at 266).

## B.    Retaliation

Count Two alleges retaliation under Title VII. To prove a Title VII retaliation claim, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *Garnett v. Bank of Am.*, 243 F. Supp. 3d 499, 513 (D. Del. 2017) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Plaintiff contends that she engaged in protected activity when she wrote a letter to one of Dr. Doppelt's supervisors on September 15, 2019. (D.I. 95 at 16.) But her letter does not mention or even suggest that Dr. Doppelt treated her differently on the basis of her sex (D.I. 93 at A502–09), and Plaintiff does not identify any evidence that she ever complained about being treated differently based on her sex. *See Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII.").

But even if Plaintiff's letter about Dr. Doppelt could qualify as protected activity, there is no evidence suggesting a causal connection between her letter and an adverse employment action. The undisputed evidence of record reflects that, after Plaintiff learned that the CORE Grant would be expiring in September 2019, she submitted a resignation letter on August 31, 2019, which stated that her last day would be September 29, 2019. (D.I. 93 at A498.) Two weeks after submitting her resignation letter, she sent the letter complaining about Dr. Doppelt. (*Id.* at A502–09.) Even when viewed in the light most favorable to Plaintiff, no reasonable jury could find on this evidence that Plaintiff suffered an adverse employment action due to her engagement in a protected activity. Defendant is entitled to judgment as a matter of law on Count Two.

### C.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Three is a state law claim for breach of the implied covenant of good faith and fair dealing. Defendant argues that it is entitled to summary judgment, arguing that Plaintiff "does not meet her burden in demonstrating that her case fits any one of the four applicable circumstances" required for an "implied covenant [claim] in the context of employment agreements." (D.I. 97 at 10; D.I. 92 at 19–20 (citing *Cole v. Del. Tech & Cmty. Coll.*, 459 F. Supp. 2d 296, 309–310 (D. Del. 2006)).) Plaintiff responded as follows:

### E. Defendants breached the Covenant of Good Faith and Fair Dealing

> When used with the implied covenant, the term 'good faith' contemplates '*faithfulness to the scope, purpose, and terms of the parties' contract.*' The concept of 'fair dealing' similarly refers to "a commitment to deal 'fairly' in the sense of consistently with the terms of the parties' agreement and its purpose.' The parameters of both concepts turn not on a court's beliefs about what was morally or equitably appropriate under the circumstances, but rather '*on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally.*'
>
> When presented with an implied covenant claim, a court first must engage in the process of contract construction to determine whether there is a gap that needs to be filled. *See* Mohsen Manesh, *Express Contract Terms and the Implied Contractual Covenant of Delaware Law*, 38 Del. J. Corp. L. 1, 19 (2013). During this phase, the court decides whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill. *Id.* A court must determine whether a gap exists because "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right." [*Allen v. El Paso Pipeline GP Co.,* 113 A.3d 167, 183 (Del. Ch. 2014), *aff'd,* 2015 WL 803053 (Del. Feb. 26, 2015).][1]

The facts set forth above concerning Doppelt's conduct and behavior towards Plaintiff, and Defendant's failure to address the same, are clearly a breach of the implied covenant of good faith and fair dealing. By allowing Plaintiff to be subjected to the conduct of her supervisor Defendant, to the contrary, can be viewed as acting in considerable bad faith. At a minimum, sufficient genuine issues of fact exist such as to preclude an award of summary judgment.

(D.I. 95 at 16–17 (Answering Br. (emphasis in original)).)

---

[1] The block quotation is set forth as it appears in Plaintiff's Answering Brief.

Plaintiff did not respond to Defendant's argument that her case does not fall within one of the four situations where Delaware courts have held that the implied covenant of good faith and fair dealing may be breached with respect to an at-will employee, nor did Plaintiff argue that the law cited by Defendants doesn't apply because Plaintiff was not an at-will employee.  Nor did Plaintiff identify what term she thinks should be implied to her contract with Defendant or explain how that term was breached.  Plaintiff has failed to identify an issue for trial on her implied covenant claim, and the Court will grant summary judgment for Defendant.

## IV.    CONCLUSION

For the reasons set forth above, it is HEREBY ORDERED that Defendant's motion for summary judgment (D.I. 91) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff and close the case.

Date: May 30, 2024

The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE